. NICOLE HALLETT
Illinois State Bar No.: 6334828
nhallett@uchicago.edu
EDWIN F. MANDEL LEGAL AID CLINIC
6020 S. University Ave.
Chicago, IL 60637
Tel: (203) 910-1980

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Norberto Salvador Navarro | ) |
| | ) |
| Plaintiff, | ) Case No. 1:23-cv-1286 |
| | ) |
| v. | ) |
| | ) |
| Will County Sheriff's Office, Paul Rojek and Steven Adent, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff, Norberto Salvador Navarro, brings this complaint against the Will County Sheriff's Office, and Officers Paul Rojek and Steven Adent of the Will County Sheriff's Office pursuant to 42 U.S.C. § 1983, and Illinois state common law, stating as follows:

### PRELIMINARY STATEMENT

1. This action seeks damages for the Will County Sheriff's Office's unlawful detention of Norberto Salvador Navarro, which resulted in severe physical and mental trauma that continues to impact Mr. Navarro to this day.

2. Mr. Navarro is a lawful permanent resident and long-term resident of Illinois. In 2017, Mr. Navarro was a witness to a high-speed car accident in Will County, Illinois, that

killed a pregnant woman and her three children. Mr. Navarro was the first person on the scene and attempted to render aid to the victims.

3. The Will County State's Attorney's Office identified Mr. Navarro as a witness at the trial of the driver, Sean Woulfe. Mr. Navarro was involved in the investigation from the outset and agreed to voluntarily testify.

4. However, inconveniently for Will County, Mr. Navarro was in the custody of U.S. Immigration and Customs Enforcement (ICE) in New Mexico as the trial grew close.

5. On January 20, 2022, Defendants Sergeant Paul Rojek and Deputy Steven Adent of the Will County Sheriff's Office, on behalf of the Will County State's Attorney's Office, arranged with ICE to have Mr. Navarro transferred from ICE custody to the Will County Adult Detention Facility, where he was detained for over two months before he testified in the Sean Woulfe trial.

6. Defendants Rojek and Adent knew that they had no legal way of holding Mr. Navarro. The writ from the Will County Circuit Court only allowed Mr. Navarro to be brought to court, not detained at the Will County Adult Detention Facility.

7. Defendants knew that Will County could not hold Mr. Navarro at the request of ICE because such detention would be illegal under the Illinois TRUST Act, as amended by the Illinois Way Forward Act, which prohibits local and state government participation in immigration enforcement.

8. Instead, Defendants detained him as a material witness. However, Defendants should have known that was illegal as well. Mr. Navarro was neither detained in an out-of-state penal institution nor was he refusing to testify, the only two circumstances in which a material witness can be detained under Illinois law.

9. Unable to find any legal authority for his detention, the Will County Adult Detention Facility referred to Mr. Navarro alternatively as a subpoenaed witness, even though he had never received a subpoena, or as a pre-trial detainee booked on a misdemeanor charge, even though he was not under suspicion of committing any crime.

10. Throughout this time, Defendant Rojek repeatedly communicated with ICE, including to arrange Mr. Navarro's transfer back to ICE after his testimony. These communications were a blatant violation of the Illinois TRUST Act and the Illinois Way Forward Act.

11. Upon information and belief, Mr. Navarro's unlawful detention was approved at the highest levels of the Will County Sheriff's Office.

12. Eventually, the Illinois Attorney General's Office intervened, forcing the Will County Sheriff's Office to agree to release Mr. Navarro.

13. Mr. Navarro was finally released from detention on March 23, 2022.

14. Although Mr. Navarro was released, the impact of his unlawful detention continues. The trauma of being wrongfully detained caused him to suffer and he continues to suffer from emotional distress, anxiety, and depression. He brings this action to seek recompense for Defendants' illegal acts.

## JURISDICTION AND VENUE

15. This Court has jurisdiction over Mr. Navarro's claim for damages pursuant to 42 U.S.C. § 1983 based upon the violations of Mr. Navarro's rights under the Fourth Amendment and Fourteenth Amendment to the U.S. Constitution. Section 1983 allows Mr. Navarro to bring claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal] laws." 42 U.S.C. § 1983. Under 42 U.S.C. § 1983, jurisdiction exists pursuant to 28 U.S.C. § 1331 and 1343.

16. This Court has supplementary jurisdiction over the Illinois state tort claims under 28 U.S.C. § 1367.

17. Pursuant to 28 U.S.C. § 1391(b)(1) and (2), venue is proper in the U.S. District Court for the Northern District of Illinois because the conduct of the defendants at issue in this Complaint all occurred within the District and Mr. Navarro currently resides in the Northern District.

**PARTIES**

18. Plaintiff, Norberto Salvador Navarro, is a 31-year-old lawful permanent resident of the United States, who was unlawfully detained from January 20, 2022 to March 8, 2022 at the Will County Adult Detention Facility.

19. Defendant Will County Sheriff's Office is responsible for serving and executing warrants, orders, and judgments in Will County, Illinois. The Sherriff's Office also is the custodian of the courthouse and the Will County Adult Detention Facility. Upon information and belief, the Sheriff's Office initiated and facilitated the inter-agency cooperation that led to the unlawful seizure and detention of Mr. Navarro. The Sheriff's Office oversaw the unlawful detention of Mr. Navarro from January 20, 2022 to March 8, 2022. The Will County Sheriff's Office is also being sued pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

20. Defendant Paul Rojek is a Sergeant at the Will County Sheriff's Office. Defendant Rojek is being sued in his personal capacity for his conduct that facilitated the inter-agency cooperation to unlawfully seize and detain Mr. Navarro.

21. Defendant Steven Adent is a Deputy at the Will County Sheriff's Office. Defendant Adent is being sued in his personal capacity for his conduct that facilitated the inter-agency cooperation to unlawfully seize and detain Mr. Navarro.

## LEGAL FRAMEWORK

*Illinois Sanctuary Laws*

22. Illinois is a sanctuary state. State law prohibits local and state law enforcement agencies from cooperating with federal immigration authorities for the purposes of civil immigration enforcement.

23. On August 28, 2017, Illinois enacted the TRUST Act. The Illinois TRUST Act precludes state and local law enforcement in Illinois from participating in federal immigration enforcement. 5 ILCS 805/1 *et seq*.

24. Most notably, the Illinois TRUST Act prohibits local law enforcement in Illinois from detaining an individual solely on the basis of an immigration detainer. An immigration detainer is defined as "a request to a State or local law enforcement agency to provide notice of release or maintain custody of an individual based on an alleged violation of a civil immigration law." 5 ILCS 805/10.

25. The Illinois Way Forward Act, which amended the TRUST Act, was enacted on August 2, 2021 and went into effect on January 1, 2022. The Act prohibits, among other things, state and local governments from "enter[ing] into or renew[ing] any contract, intergovernmental service agreement, or any other agreement to house or detain individuals for federal civil immigration violations." 5 ILCS 805/15(g)(1).

26. The Act also prohibits any local law enforcement agency from "transfer[ring] any person into an immigration agent's custody." 5 ILCS 805/15(h)(3).

*Illinois Material Witness Laws*

27. Illinois law allows for the detention of material witnesses in criminal prosecutions in certain circumstances. First, The Illinois Uniform Rendition of Prisoners as Witnesses in Criminal Proceedings Act allows Illinois courts to certify that a prisoner held in an out-of-state "penal institution" is a material witness in an Illinois state criminal proceeding for the purpose of transferring the prisoner to Illinois to testify in such proceeding. 725 ILCS 235/6.

28. In addition, a material witness can be detained if the witness refuses to execute a recognizance or if the witness executes a recognizance and fails to comply with its terms. 725 ILCS 5/109-3(d). While a court can order a material witness to pay a bond, it cannot refuse to release a witness absent a finding that detention is necessary to secure the witness's attendance at trial. State and local authorities cannot detain an individual under this provision absent a court order.

## STATEMENT OF FACTS

29. Mr. Navarro has been a lawful permanent resident since he entered the United States in 1999 at the age of eight. On July 24, 2017, Mr. Navarro witnessed a tragic car accident that resulted in the death of a young mother and her children. Mr. Navarro called 911 to report the incident and rendered aid to those injured.

30. Mr. Navarro has experienced post-traumatic stress disorder (PTSD) following the accident. Nevertheless, Mr. Navarro cooperated with the investigation from the outset and volunteered to be a witness in the case against the driver, Sean Woulfe, for reckless homicide.

31. In May 2021, ICE placed Mr. Navarro in removal proceedings and civilly detained him at the Torrance County Detention Center in Estancia, New Mexico.

32. Torrance County Detention Center is not a "penal institution." Rather, it is a private detention facility managed by CoreCivic that houses civil immigration detainees.

***Steps Taken by Defendants to Secure Mr. Navarro's Transfer to Will County***

33. By September 2021, while Mr. Navarro was detained by ICE, the Will County State's Attorney's Office had identified Mr. Navarro as a key witness in the Sean Woulfe prosecution.

34. Will County Assistant State's Attorney Jeffrey Tuminello and Sergeant Paul Rojek of the Will County Sheriff's Office sought to transfer Mr. Navarro from New Mexico to Will County to testify at the trial.

35. Around September 24, 2021, Defendant Rojek began electronically communicating with an ICE employee in an effort to obtain custody of Mr. Navarro from ICE. Will County Assistant State's Attorney Tuminello was included in this email correspondence and actively engaged in further communications with ICE personnel.

36. Defendant Rojek made several assurances to ICE via email in order to obtain custody of Mr. Navarro. For example, on September 24, 2021, in an email to ICE personnel, Defendant Rojek ensured ICE that the Sheriff's Office would "be responsible for taking custody, holding, and returning [Mr. Navarro] to ICE custody."

37. Six days later, Defendant Rojek emailed another ICE officer and further discussed obtaining custody of Mr. Navarro. In that email, Defendant Rojek stated that there was "concern that our state law may prohibit ICE from relinquishing this subject to our

7

custody." He further stated: "In the past, I worked with [assistant state's attorney] Dant on an ICE transfer... This was a couple years ago though, and more sanctuary nonsense laws have passed."

38. Defendant Rojek was also aware of several assurances that were made by Mr. Tuminello to ICE in order to obtain custody of Mr. Navarro.

39. On January 13, 2022, Assistant State's Attorney Tuminello further stated to ICE, in an email with Defendant Rojek copied, that the Will County Adult Detention Facility could be used to hold Mr. Navarro, and that he could request a material witness bond on Mr. Navarro.

40. Mr. Tuminello further stated to ICE that he would request a "high bond" of one million dollars. One million dollars is $725,000 higher than the bond of Sean Woulfe, the defendant against whom Mr. Navarro was scheduled to testify, even though Mr. Woulfe had been charged with sixteen counts of reckless homicide. Defendant Rojek according to Mr. Tuminello would handle the transportation of "Mr. Navarro from your facility to the jail here."

41. These communications and assurances were all in direct violation of the TRUST Act and the Illinois Way Forward Act, which Defendant Rojek knew or should have known precluded local governments from working with ICE.

42. Despite this, Defendant Rojek made the decision to continue cooperating with Mr. Tuminello and ICE.

43. Defendant Rojek did not make the decision to cooperate with ICE by himself. Defendant Rojek's action received the approval of his superiors. Two days before Defendant Rojek was to travel to New Mexico to obtain custody of Mr. Navarro, he sent an email to

8

        Deputy Chief Dan Jungles explaining to him the situation with Mr. Navarro and ICE. In that email, Defendant Rojek also asked Mr. Jungles to let him know "who to clear" Norberto's detention with or if Mr. Jungles could "talk to the chiefs there."

44. Later that day, Mr. Jungles forwarded that email to Dale Santerelli, the former Chief Deputy of Will County, David Adams, the Warden of Will County, and Vincent Perillo, the new Deputy Chief of Will County.

45. Upon information and belief, Defendant Rojek's request to permit the detention of Mr. Navarro after his transfer from New Mexico was approved by one or more of the individuals who received Defendant Rojek's email or other individuals with policymaking authority at the Will County Sheriff's Office.

46. After coordinating the assurances that ICE needed from the Will County Sheriff's Office and Will County State's Attorney's Office, Assistant State's Attorney Tuminello and Defendant Rojek were able to move forward with their plan to bring Mr. Navarro to Will County.

47. On or around January 20, 2022, Defendants Rojek and Adent received a writ signed by Judge Daniel Rippy of the Circuit Court of Will County. The writ explicitly required that the Torrance County Detention Center allow for Mr. Navarro to be brought before the Court on January 20, 2022, at 9:30 a.m. The writ does not specify under which provision of Illinois material witness law Mr. Navarro's transfer was being sought.

48. The writ does not permit detention of Mr. Navarro beyond what would be necessary to bring him to court on January 20, 2022 at 9:30 a.m.

*Mr. Navarro's Transfer to Will County*

49. On January 20, 2022, Defendants Rojek and Adent traveled to New Mexico to obtain custody of Mr. Navarro from ICE.

50. After obtaining custody of Mr. Navarro, Defendants Rojek and Adent transported Mr. Navarro to an airport in New Mexico. They then boarded a commercial flight to Chicago, Illinois.

51. While in custody of Defendants Rojek and Adent, Mr. Navarro remained in handcuffs, and his liberty and freedom of movement were deprived.

52. When they arrived in Illinois, Defendants Rojek and Adent transported Mr. Navarro to the Will County Adult Detention Facility ("the facility").

53. Upon information and belief, Mr. Navarro did not appear in court before Judge Rippy at 9:30 a.m. on January 20, 2022 as required by the writ. Mr. Navarro did not see the inside of the courtroom until more than six weeks later.

54. Upon information and belief, Mr. Navarro's detention went beyond what was authorized by the writ and was approved by policymakers in the Will County Sheriff's Office.

*Defendants Knew that Mr. Navarro's Detention was Unlawful*

55. Throughout his detention, Defendants had actual knowledge that they had no lawful basis for detaining Mr. Navarro.

56. Mr. Navarro was not booked into the facility for having committed any crime, and he had no outstanding warrants.

57. His classification was initially noted as "WRIT," even though the writ issued by Judge Rippy only allowed Mr. Navarro to be brought from New Mexico to court on January 20, 2022, not detained until trial.

10

58. However, Defendant Rojek made clear that Mr. Navarro's detention was to ensure that Mr. Navarro could be returned to "ICE custody" and that it could violate the Illinois laws he called "nonsense."

59. On January 22, 2022, Karla Caliendo, a Classification Specialist from the Will County Adult Detention Facility, reached out to Inmate Records Supervisor Lisa Kikkert to inquire about Mr. Navarro's detention. Ms. Caliendo noted that Mr. Navarro's "only charge… [was] [a] writ" and that she had assumed that this had to be a mistake because the case number belonged to Sean Woulfe.

60. Ms. Caliendo then asked if perhaps Mr. Navarro should have been booked as a subpoenaed witness. Mr. Navarro's classification was subsequently changed from "WRIT" to "FTA/SUBPOENAED WITNESS." However, Mr. Navarro was never served with a subpoena.

61. On January 27, 2022, the Will County Sheriff's Office received a detainer from ICE requesting that Mr. Navarro be held in custody until such time as ICE could retake custody of Mr. Navarro. ICE also sent the January 21, 2022 order of an immigration judge administratively closing Mr. Navarro's case in immigration court.

62. In an email sent that same day, Defendant Rojek asked Ms. Kikkert to add those documents to Mr. Navarro's file and then stated that he did not "believe we honor these by state law, but they asked that we include this in Navarro's file." Ms. Kikkert responded that same day stating, "I think you are right, but I'll put it in his file for consideration regardless."

63. Throughout his detention, the facility required Mr. Navarro to wear a wristband that falsely indicated he was booked on a misdemeanor. In fact, Defendants knew that Mr. Navarro was not being held based on the suspicion of having committed any crime.

### *The Conditions of Mr. Navarro's Detention*

64. After Mr. Navarro was booked, he was placed in quarantine for approximately two weeks. During that time, Mr. Navarro was only permitted to leave his cell to shower. He was only given access to freezing water. He received insufficient and inedible food.

65. Mr. Navarro was never told why he was being detained. Shortly after being moved into the general population, Mr. Navarro tried to get an answer from a guard. Mr. Navarro asked the guard several times why he was being detained, and in response, the guard called in the "special team."

66. When they arrived, they immediately threw him to the ground, stripped him, handcuffed him, and took him to solitary confinement for five days.

67. During those five days, Mr. Navarro was not permitted to leave his cell, make phone calls, or shower. His cell was kept at a freezing temperature.

68. While detained in the facility, Mr. Navarro spent nearly $1,000 at the commissary and to pay for phone calls with his family.

69. Detainees were not given sufficient food at the facility to sustain themselves. Mr. Navarro believes that if he had not been able to supplement his meals at the commissary, he would have starved. In fact, Mr. Navarro regularly saw individuals eating out of the trash.

70. Mr. Navarro filed several complaints against officers at the facility. However, every time he filed a complaint, an officer threw it into the trash.

*Attempts to Secure Mr. Navarro's Release*

71. Under the writ, Mr. Navarro should have received a preliminary hearing to determine whether he was lawfully held as a material witness on January 20, 2022. He did not receive this hearing until forty-eight days later, on March 8, 2022. This hearing was only scheduled after Mr. Navarro's legal counsel filed an Emergency Motion for Release with the court.

72. Mr. Navarro was released from custody on March 22, 2022, sixty-one days after he had been transferred to Illinois.

73. During the months that Mr. Navarro was detained, Mr. Navarro became the subject of a high-profile public campaign by immigration advocates and community organizations. Several rallies in front of the Will County Courthouse attracted local and state press attention.

74. On March 2, 2022, Mr. Navarro's attorneys filed an Emergency Motion for Release on recognizance, arguing that Mr. Navarro's detention was unlawful.

75. On the same day that the Emergency Motion was filed, Assistant State's Attorney Tuminello informed an ICE deportation officer that Mr. Navarro was expected to testify on March 21, 2022 and that he would "defer to Sgt. Rojek from the Will County Sheriff's Department to transport him back."

76. Prior to the hearing on the Emergency Motion on March 8, 2022, Assistant State's Attorney Tuminello asked to speak with Mr. Navarro's attorneys at the courthouse.

77. During that meeting, Assistant State's Attorney Tuminello asked Mr. Navarro's attorneys to withdraw their motion for release on recognizance and to allow the bond to be set for

one million dollars. In exchange, the Will County State's Attorney's Office agreed to certify Mr. Navarro for a U visa.

78. During this meeting, Assistant State's Attorney Tuminello admitted that Mr. Navarro's detention was not proper and that they "wanted to make it right." Assistant State's Attorney Tuminello repeatedly asked Mr. Navarro's attorneys to "help me out here."

79. Defendant Tuminello also stated that if Mr. Navarro were able to secure his release in court, the Will County Sheriff's Office would immediately transfer him back into ICE custody and that under no circumstances would he be able to walk free.

80. Mr. Navarro agreed to not challenge a one-million-dollar bond in exchange for a signed U visa certification, because he wanted to avoid deportation and remain in the United States with his family.

81. Shortly after this meeting, Mr. Navarro's attorneys appeared in court and agreed to a one-million-dollar bond.

82. On March 17, 2022, sixteen Illinois State Representatives and State Senators, as well as a member of U.S. Congress, sent a letter to Illinois Attorney General Kwame Raoul alerting him to Mr. Navarro's detention by Will County. The letter details how the "Will County State's Attorney's Office flagrantly violated the Trust Act by entering into an agreement with ICE, and as outlined by the agreement, intends to continue to violate the Act by transferring Mr. Navarro to ICE on or around March 22."

83. The letter urged the Attorney General to take action to enforce the TRUST Act, as the legislation "tasks the Attorney General with enforcing this law in the interest of the people of Illinois." The representatives and senators urged the Attorney General to prevent the transfer of Mr. Navarro from Will County to ICE.

84. A similar letter was sent again to the Attorney General on March 21, 2022, signed by three other state representatives and a member of Congress.

85. On March 21, 2022, Assistant Attorney General Amy Meek emailed the Civil Division Chief Mary Tatroe of the Will County State's Attorney's Office informing her of her Office's intent to file a complaint against the Will County Sheriff's Office "to establish jurisdiction" and that she had also attached a consent order for her to review. AAG Meek also confirmed that it was her understanding that the Will County State's Attorney's Office would be "signing as counsel for the Sheriff's Office."

86. The complaint stated its purpose was to "ensure compliance with the TRUST Act" and ensure that Mr. Navarro was released from the Sheriff's Office's custody after completion of his testimony.

87. The consent order, which largely restated what was said in the complaint, was to be brought as a "joint motion" by the Office of the Illinois Attorney General and the Will County State's Attorney's Office who was "signing as counsel for the Sheriff's Office."

88. Upon information and belief, the complaint and consent order were never signed, but were passed along to Will County State's Attorney Glasgow.

89. On March 22, 2022, the Will County State's Attorney's Office, the Will County Sheriff's Office, and the Office of the Illinois Attorney General memorialized and finalized an agreement regarding Mr. Navarro.

90. The purpose of that agreement was to "ensure compliance with the Illinois TRUST Act," as amended by the Illinois Way Forward Act, "with respect to Norberto Navarro Torres." That agreement also stated that "Mr. Navarro [was] the subject of a January 26, 2022 immigration detainer … issued by ICE."

91. Moreover, the agreement required that the Sheriff's Office release Mr. Navarro upon completion of his testimony, refrain from transferring custody to any federal immigration agent, refrain from providing information not otherwise publicly available to immigration agents, and refrain from otherwise facilitating Mr. Navarro's apprehension by immigration agents.

92. Mr. Navarro testified at the trial of Sean Woulfe on March 22, 2022. On March 23, 2022, Mr. Navarro was released from Will County custody and was not transferred to ICE.

**Harm Caused by Mr. Navarro's Unlawful Detention**

93. Although Mr. Navarro was released, the impact of his detention continues to affect his mental health. While he was detained, Mr. Navarro experienced distress because of interactions with gang members in the facility, who would guard access to the facility's phones and noticed when he went to court.

94. Mr. Navarro worried for his safety because he was a witness for the prosecution in an environment in which "snitches" were in danger.

95. He suffered physically from the insufficient food and heat during his detention. He spent much of his time in the Will County Adult Detention Facility hungry and cold.

96. His time in solitary confinement in retaliation for asking questions about his detention caused him further physical and emotional distress.

97. Even when he was in the general population, Mr. Navarro suffered because of the lack of recreation time provided to inmates. If fights broke out among inmates at the facility, the officers would revoke recreation time for every inmate. Mr. Navarro spent a large portion of his detention at the facility within his cell because of this.

98. Mr. Navarro was separated from his family, including his nine-year-old daughter, during his detention. The separation from his daughter caused Mr. Navarro extreme emotional distress.

99. Mr. Navarro has made efforts to rebuild his life by returning to his job and rejoining his community, but he has found that his ability to interact socially and professionally is continuously impacted by anxiety and depression.

## CLAIMS

### COUNT I (ALL DEFENDANTS)
### FOURTH AMENDMENT
### 42 U.S.C. § 1983

100. The foregoing paragraphs of this complaint are incorporated as if set forth here.

101. Defendants at all times relevant to this action were acting under the color of state law.

102. Defendants unlawfully deprived Mr. Navarro of his right to remain free from unreasonable seizures in violation of the Fourth Amendment to the Constitution of the United States incorporated to the States through the Fourteenth Amendment.

103. Defendants' actions were intentional, and those actions violated Mr. Navarro's Fourth Amendment rights.

104. Defendants did not have legal cause or excuse to arrest or detain Mr. Navarro.

105. The Will County Sheriff's Office is liable under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) for authorizing the unlawful seizure of Mr. Navarro in violation of his Fourth Amendment rights.

106. Defendants Rojek and Adent acted with a reckless or callous disregard for Mr. Navarro's Fourth Amendment rights and as such are liable for punitive damages.

107. As a result of the acts and conduct complained of herein, Mr. Navarro has suffered and will continue to suffer emotional pain, suffering, inconvenience, loss of enjoyment of life, loss of liberty, and other nonpecuniary losses. Mr. Navarro has further experienced severe emotional distress.

**COUNT II (ALL DEFENDANTS)
DUE PROCESS CLAUSE
FOURTEENTH AMENDMENT
42 U.S.C. § 1983**

108. The foregoing paragraphs of this complaint are incorporated as if set forth here.

109. Defendants at all times relevant to this action were acting under the color of state law.

110. Defendants unlawfully and intentionally restrained Mr. Navarro's freedom of movement and liberty without due process of law in violation of the Fourteenth Amendment of the U.S. Constitution.

111. Defendants did not have legal cause or excuse to restrain Mr. Navarro's freedom of movement and liberty.

112. Mr. Navarro was conscious of his detention and did not consent to the detention.

113. The Will County Sheriff's Office is liable under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) for authorizing the unlawful detention of Mr. Navarro in violation of his due process rights.

114. Defendants Rojek and Adent acted with a reckless or callous disregard for Mr. Navarro's Fourteenth Amendment rights and as such are liable for punitive damages.

115. As a result of the acts and conduct complained of herein, Mr. Navarro has suffered and will continue to suffer emotional pain, suffering, inconvenience, loss of enjoyment of life, loss of liberty, and other nonpecuniary losses. Mr. Navarro has further experienced severe emotional distress.

## COUNT III (ALL DEFENDANTS)
## FALSE IMPRISONMENT
## ILLINOIS COMMON LAW

116. The foregoing paragraphs of this complaint are incorporated as if set forth here.

117. Defendants Rojek and Adent unlawfully and intentionally restrained Mr. Navarro's freedom of movement and liberty.

118. Defendants did not have legal cause or excuse to restrain Mr. Navarro's freedom of movement and liberty.

119. Defendants Rojek and Adent acted wantonly and willingly and as such are not protected by immunity.

120. Defendants Rojek and Adent acted wantonly and willingly, and as such are liable for punitive damages.

121. Defendant Will County Sheriff's Office is liable pursuant to *respondeat superior*.

122. As a result of the acts and conduct complained of herein, Mr. Navarro has suffered and will continue to suffer emotional pain, suffering, inconvenience, loss of enjoyment of life, loss of liberty, and other nonpecuniary losses. Mr. Navarro has further experienced severe emotional distress.

### PRAYER FOR RELIEF

Wherefore, Plaintiff Norberto Salvador Navarro respectfully requests:

1. Compensatory damages;
2. Punitive damages;
3. Attorney's fees and costs pursuant to 28 U.S.C. §§ 2678, 2412(a)(1);
4. Any further relief that the Court deems appropriate.

**JURY DEMAND**

5. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial of all triable issues and claims.

Dated: March 2, 2023

Respectfully Submitted,

/s/ A. Nicole Hallett

A. NICOLE HALLETT
    Supervising Attorney
Renée Girard
Johan Gonzalez
    Student Attorneys

nhallett@uchicago.edu
EDWIN F. MANDEL LEGAL AID CLINIC
6020 S. University Ave.
Chicago, IL 60637
Tel: (203) 910-1980

*Counsel for Plaintiff*